708 So.2d 1065 (1998)
STATE of Louisiana
v.
Peter BACUZZI
No. 97-KA-573.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 1998.
*1066 Marion B. Farmer, Covington, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, for Plaintiff/Appellee.
DALEY, Judge.
The defendant pled guilty to aggravated battery in violation of LSA-R.S. 14:34. He has appealed his ten-year prison sentence as being constitutionally excessive.

FACTS:
On May 4, 1996, the defendant and Mr. Robert Deville, who were long time friends, assisted Mr. Deville's niece in building a garage. Mr. Deville is the defendant's wife's cousin. The men stopped working on the garage at about 8:00 p.m. and went to a barroom. The men returned to Mr. Deville's home, where the defendant and his wife were house guests, in the early morning hours of May 5, 1996. While Mr. Deville was unloading tools from his truck, the defendant pointed a gun at him. The defendant told Mr. Deville that he was going to kill him. Mr. Deville grabbed a hammer, thinking that he would knock the defendant out and then take him to bed. The defendant shot Mr. Deville in the right elbow. Mr. Deville dropped the hammer and the defendant shot him in his left arm. He stood up and the defendant shot him from the rear. As Mr. Deville turned to go into the house, the defendant fired two more shots, hitting Mr. Deville in the stomach and the left kidney. Mr. Deville laid down in the garden in front of his home for about one and one half hours. He was bleeding from his wounds. He asked the defendant to call 911. The defendant stated that he would not call 911, because he would get into trouble.
At about 4:30 a.m., Mr. Deville's son, Lee, returned home and saw his father lying on the ground. His father told him to call 911, and the defendant instructed him not to. The defendant pointed a gun at Lee. Lee was able to wrestle the gun from the defendant's grasp and call the police. In the meantime, the defendant obtained another gun.
When the police arrived, the defendant's wife handed them a .38 caliber revolver she had just taken from her husband. She told them that her husband was in an upstairs bedroom. The defendant was taken to the hospital for treatment of a laceration on his head, and then arrested for the charge of attempted murder. This charge was later amended to aggravated battery.
On October 3, 1996, the defendant withdrew his former plea of not guilty and entered a plea of guilty as charged. After advising the defendant of his rights, the court accepted the defendant's guilty plea. On November 13, 1996, following testimony from the victim and his family and the defendant and his family and the completion of a pre-sentence investigation report, the defendant was sentenced to ten years at hard labor.
*1067 Immediately prior to sentencing, the trial court held a hearing to receive victim impact evidence for the trial court to consider before sentencing.
During the impact statements, Mr. Deville reiterated the events of May 5, 1996. He explained that as he returned to his truck to unload tools, the defendant pointed a gun at him and stated he was going to kill him. After being shot three times, he told the defendant, "Peter, stop shooting. You're going to kill me." Mr. Deville was then shot two more times. He described what took place as each of the five bullets entered his body. After being shot, he opened the glass door to enter his home, but the front door closed completely, locking him outside. After his requests to the defendant to call for help were refused, he lay on the ground waiting for someone to rescue him. Mr. Deville testified that after he asked his son to call for help, the defendant told his son "If you value your life, you will not call 911." Mr. Deville then described the exploratory surgery he underwent to repair some of the damage done by the bullets. He developed three hernias along the incision, which have required additional surgery. These injuries have prevented Mr. Deville from resuming his previous level of activity and cause him difficulty in sitting up straight. As a result of this incident he and his business have suffered an estimated $15,000 to $20,000 loss. Mr. Deville estimated that he incurred approximately $4,500 in medical expenses which were not covered by insurance.
Mr. Deville's wife, Jean Deville, testified that she and her family are very afraid that the defendant will harm them. She stated that she had previously heard the defendant state that he "would shoot people" whom he felt had hurt him.
Testimony was also received from Mr. Albert Hyde, Jean Deville's brother. He stated that after the shooting, he had to help the Deville children. They were afraid to return to their home because they were concerned that the defendant would come back to harm them. The children stayed with him for a period of time. He concluded by stating that the Deville family was very much afraid of what the defendant "can and will do."
One of Mr. Deville's daughters, Robin, testified that following the shooting when they returned to their home to obtain necessities, her brother would go around the house with a baseball bat to be sure the defendant was not hiding in the house. She reasoned that since her father's shooting by the defendant was unprovoked that Mr. Bacuzzi was capable of doing the same thing to the rest of her family. She also reiterated her father's decreased physical ability since the shooting.
The defendant's treating psychiatrist, Dr. Mark Townsend, took the stand and testified that the defendant suffers from a bi-polar disorder and generalized anxiety disorder. He explained that the defendant has episodes of irritability, racing thoughts, loud, rapid speech, and sleeplessness, followed by periods of depression. He has been prescribed the medication Alprazolam to be taken four times per day for this condition. Dr. Townsend pointed out to the court that if this medication is not administered correctly, the defendant could suffer seizures. Ambien has been prescribed for the defendant's insomnia. Dr. Townsend opined that incarceration would adversely impact the defendant psychologically. On cross-examination, Dr. Townsend stated that he feels the shooting was caused in part by the conditions the defendant is being treated for and he was unable to predict whether this could happen again.
The defendant's wife of thirty years, Rosemary Jean Bacuzzi, testified that her husband had a successful teaching career in special education for more than twenty years. He was forced to retire in 1992 due to chronic fatigue immune deficiency syndrome. She described her husband as being in constant pain for the past seven years. Her husband suffers from problems with his prostate, urinary incontinence, and stenosis of the spine. She explained that he has special needs which she must attend to constantly. She expressed sorrow for the events that had taken place.
The defendant's son testified that it would cause a hardship on the family if his father was incarcerated.
*1068 The defendant took the stand and explained his various mental and physical infirmities. He described his back as being in bad shape, stating that the discs have slipped. Back surgery has been recommended by his physician. He described cysts on his heels. He explained that he has difficulty standing for any length of time. The defendant stated that he must wear a splint in his mouth because of his tendency to grind his teeth. He explained that the chronic fatigue syndrome caused fibromyalgia which is manifested by constant muscle aches and weakness. The defendant testified that he has no animosity for Mr. Deville and his family, nor does he have any feelings that he would like to seek revenge from the Deville family.
The defendant submitted medical reports from several of his treating physicians. The first report was from Dr. Mitchel Harris, an orthopaedic surgeon, who was treating the defendant's back problems. Dr. Harris suggested to the court that the defendant be allowed to complete evaluation for his spinal condition prior to incarceration. Dr. Thomas Salinas, the dentist who treats the defendant for problems with his bite submitted a report explaining that the defendant needs to wear a splint in his mouth to prevent the grinding of his teeth. The report refers to the defendant as being "a hyper-excitable and upset individual." A report was submitted by an internist, Dr. Miguel Rivera which states that the defendant suffers from chronic fatigue syndrome, renal insufficiency, nephrolithiases, hyperlipidemia, radiculopathy with neural stenosis, and anxiety-panic disorder. These conditions require frequent follow up and medical care, and an environment that "promotes balance of rest with adequate nutrition, necessary for his well being." Finally, a report from Dr. Townsend was submitted which stated "I would be surprised if a jail sentence did not injure Mr. Bacuzzi physically or psychologically. It would not be an exaggeration to say that a jail sentence for Mr. Bacuzzi would be a kind of death sentence." The Pre-sentence investigation report stating that probation is not recommended, was also contained in the evidence submitted.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant contends that the trial court erred in sentencing him to a constitutionally excessive sentence.

DISCUSSION
The defendant argues that his sentence of ten years, the maximum sentence for this offense, is constitutionally excessive. The defendant properly preserved the sentencing issue for appeal by filing a timely Motion to Reconsider Sentence.
A sentence is unconstitutionally excessive if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Ratcliff, 416 So.2d 528 (La.1982).
The Louisiana Supreme Court addressed the issue of sentencing in State v. Robicheaux, 412 So.2d 1313, 1319 (La.1982), noting:
Trial judges are granted great discretion in imposing sentences, but even sentences within statutory limits may be excessive under certain circumstances. State v. Jones, 398 So.2d 1049 (La.1981); State v. Spencer, 374 So.2d 1195 (La.1979). Sentences must be individualized to be compatible with the offenders as well as the offenses. In deciding whether to confine a defendant or grant probation, the judge must consider certain factors enumerated in La.C.Cr.P. art. 894.1(A)(B). State v. Jones, supra. This article entitles the defendant to such an articulation and represents a legislative attempt to guide the trial judge in thoughtfully imposing an appropriate sentence under the facts and circumstances of the particular case. Also this serves as an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Ramos, 390 So.2d 1262 (La.1980).
In reviewing a sentence for excessiveness this Court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the *1069 wide discretion afforded the trial judge in determining and imposing sentence. A sentence within statutory limits will not be set aside as excessive absent manifest abuse of discretion. State v. Jones, 94-383 (La.App. 5 Cir. 10/25/94), 645 So.2d 773, writ denied, 94-2826 (La.3/10/95), 650 So.2d 1175; State v. Lynch, 512 So.2d 1214 (La.App. 5 Cir.1987). LSA-R.S. 14:34 requires that:
Whoever commits the crime of aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.
In imposing the defendant's sentence in this case the court took into account the testimony elicited in the impact hearing, the physicians reports, and the pre-sentence investigation, noting that the pre-sentence investigation recommends incarceration. The trial court also considered the sentencing guidelines set forth in Louisiana Code of Criminal Procedure Article 894.1. The trial judge felt that probation should not be imposed due to the risk that the defendant would commit another crime. The trial court was of the opinion that the defendant is in need of correctional treatment and that to place the defendant on a period of probation would depreciate the seriousness of the offense which he has committed. The trial judge then stated:
The Court further takes notice that the offender in the commission of his acts created a risk of death or, indeed, great bodily harm to the victim in this case. The Court takes notice of the nature of the crime, itself, in that the defendant fired five bullets and shot the defendant (sic) on fivefive times.
The Court is of the opinionthe Court takes notice that the act and conduct of the defendant is a violent act, and that it resulted in significant injury to the defendant (sic). And that in the commission of his offense, he used a dangerous weapon, to wit, a firearm.
The trial judge then noted that he took into consideration the medical condition to the defendant, and felt that his mental and physical needs could be met and satisfied in an institution. The trial court specifically noted the defendant's bi-polar disorder and stated that there was no evidence to suggest that the defendant did not know the difference between right and wrong. It was pointed out that the colloquy during the guilty plea indicated that the defendant knowingly committed the offense. The trial court held that the offense was committed without provocation on the part of the victim.
The defendant was then sentenced to 10 years at hard labor.
Based on the transcript of the trial judge's statements made prior to sentencing, we find that the requirements of Article 894.1 were met. Once adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. State v. Smith, 520 So.2d 1252 (La. App. 5 Cir.1988), writ denied, 523 So.2d 1320 (La.1988).
In support of his contention that this represents an unconstitutionally excessive sentence, the defendant argues that the trial court placed great weight on the contention that the victim was shot five times. The defendant argues that there was no evidence to support this finding, other than the victim's testimony, as the victim's medical records were not submitted. We note that in the argument made by the defendant's trial counsel for the Motion to Reconsider the Sentence, the defendant's trial counsel stated "Granted, it was five shots to this man." Additionally, we find no indication that the defendant raised this issue before the trial court. Accordingly, we decline to consider this issue since it was raised for the first time on appeal. Segura v. Frank, 93-1401 (La.1/14/94), 630 So.2d 714.
The defendant also argues that the trial court erred in finding that the shooting of the victim was unprovoked. In support of this contention, defendant has attached the medical records from Medical Center of Louisiana, where the defendant was taken prior to being taken to jail. The defendant argues that these records reveal that the defendant sustained lacerations and contusions to his head after being hit with a hammer. These *1070 medical records were not made part of the record, therefore, this court is precluded from reviewing these records.
The defendant argues that the trial judge erred in imposing the maximum sentence, ten years in jail. We note that the trial judge could have also fined the defendant $5,000.00 under the statute. In sentencing the defendant, the court considered the aggravating circumstances of the significant injury to the victim, the fact that the defendant's act created a severe risk of death or great bodily harm to the victim, and the nature of the crime itself, the defendant's shooting the victim five times.
The defendant argues that the court failed to consider the mitigating circumstances of the defendant's mental and physical health. However, the court stated that it believed the defendant's mental and physical needs could be met in an institution. The court further stated that it had not heard any information to suggest that the defendant did not know right from wrong at the time of the offense. We note that during the sentencing hearing, the defendant attempted to introduce evidence as to his intoxication at the time of the offense and his psychological disorders as evidence of mitigation. The State's objections to the introduction of this evidence were sustained by the trial court. This Court relying on the mitigating circumstances set forth in Code of Criminal Procedure Article 905.5(e) and Code of Criminal Procedure Article 894.1 considers evidence of intoxication and psychological condition to be mitigating. The trial court erred in sustaining the State's objection to the testimony by the defendant on these issues. However, this error does not create reversible error since the pre-sentence investigation report and Dr. Townsend's report of November 11, 1996 both of which were considered by the trial judge and referred to in his reasons for sentencing included information concerning the defendant's intoxication at the time of the offense and his psychological disorders.
Finally, the defendant argues that his sentence was excessive because he was a first time offender. However, the jurisprudence reflects that the maximum aggravated battery sentences have been upheld when a first-time felony offender has committed a violent criminal act. See State v. Hawkins, 95-0028 (La.App. 4th Cir. 3/29/95), 653 So.2d 715; State v. Jones, supra; State v. Kafieh, 590 So.2d 100 (La.App. 5th Cir.1991).
Recognizing the wide discretion afforded to the trial judge in determining and imposing sentence, coupled with the defendant's violent act of shooting the defendant five times, as well as the victim's extensive physical injuries, we hold that the trial court's ten-year sentence is not an abuse of discretion and is not constitutionally excessive.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Godejohn, 425 So.2d 750 (La.1983); State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990).
We note that the minute entry for October 3, 1996, reflects that the defendant pled guilty to attempted second degree murder, a violation of LSA-R.S. 14:27, 14:30.1 when in fact he pled guilty to the amended charge of aggravated battery, a violation of LSA-R.S. 14:34. However, the transcript of the defendant's guilty plea, and the commitment correctly reflect that the defendant pled guilty to the crime of aggravated battery. Generally, where there is a discrepancy between the minute entry and transcript, the transcript should prevail. State v. Lynch, 441 So.2d 732 (La.1983). Accordingly, this error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.