817 So.2d 335 (2002)
STATE of Louisiana
v.
David SULLIVAN.
No. 02-KA-35.
Court of Appeal of Louisiana, Fifth Circuit.
April 30, 2002.
*336 Paul D. Connick, Jr., District Attorney, State of Louisiana, Terry M. Boudreaux, Thomas J. Butler, Kenny Bordelon, Assistant District Attorneys, Gretna, LA, for State of Louisiana, Plaintiff-Appellee.
Jane L. Beebe, Gretna, LA, for David Sullivan, Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On April 10, 2001, defendant, David Sullivan, was charged with the March 9, 2001 aggravated battery of Roy Beyer with the use of a knife. LSA-R.S. 14:34. Defendant was arraigned on April 11, 2001, and entered a not guilty plea.
On May 9, 2001 defendant filed a Motion to Appoint a Sanity Commission. On June 28, 2001, a competency hearing was held and the court found defendant competent to stand trial. Defendant filed numerous pre-trial discovery motions, all of which were satisfied by August 1, 2001.
On September 18, 2001, defendant waived his right to a trial by jury and proceeded to trial before the judge. On that day, the trial judge found defendant guilty as charged. Following the guilty verdict, defendant advised the court that he would subpoena his medical records in order that they could be presented at sentencing. The State informed the court that it would present letters from neighbors of the victim and defendant for consideration at the time of sentencing.
On November 28, 2001, defendant was sentenced to ten years of imprisonment at hard labor with credit for time served. On that date, defendant also filed a written appeal motion, which was granted by the trial court.

*337 FACTS

Evelyn and Ray Beyer, who live at 3609 46th Street in Metairie, were next-door neighbors of defendant, David Sullivan. On March 9, 2001, at approximately 9:30 p.m., Mrs. Evelyn Beyer exited her house to walk her visitors outside. Her husband, Ray Beyer followed, shortly thereafter with his dogs. During this time, Emily Brown, the Beyers' neighbor from across the street came home from visiting her father in the hospital. Mrs. Beyer and Ms. Brown were talking near the curb. During their conversation, Mrs. Beyer could hear the doors of Sullivan's house being open and closed. Ray Beyer put the dogs inside the house and returned to talk to Ms. Brown about her father. At this moment, Mrs. Beyer and Ms. Brown were facing the street and Mr. Beyer had his back to the street. Mrs. Beyer and Ms. Brown saw Sullivan exit his house with his arms raised and a knife in his hand. The women called to Mr. Beyer, and, at that time, Ms. Brown shoved Mr. Beyer out of the way. Mr. Beyer turned, just as Sullivan lunged towards his back with the knife. Sullivan struck Mr. Beyer's arm. The knife blade broke off and fell to the ground. A scuffle ensued and Mr. Beyer and Sullivan fell to the ground, where the scuffle continued. During the encounter, Mr. Beyer was struck above the eye. Mrs. Beyer ran inside to call 911, as the fight continued outside. During the men's struggle, Ms. Brown retrieved a rod from Mr. Beyer's boat, which was located on the carport. She used the rod to strike Sullivan three times. As Sullivan got up from the ground to go inside his house, he was holding the broken knife handle in his hand. Before entering the house, he dropped the knife handle on the lawn in front of his house.
Detective Daniel Wright of the Jefferson Parish Sheriff's Office arrived at the Beyers' house at about 9:45 p.m. to investigate this incident. Detective Wright met with Mr. Beyer, who was in the driveway of his house when the officer arrived. Mr. Beyer had a severe cut over his left eye and was bleeding profusely. Detective Wright interviewed Mr. Beyer and his wife and Ms. Brown concerning the attack. The assault weapon consisting of an 8½-inch knife was located near the house. The blade was found in the victim's driveway and the knife handle was found in Sullivan's front lawn.
Sullivan was interviewed by Detective Wright and placed under arrest. He admitted striking Mr. Beyer two times but denied striking him with the knife.
Officer Richard Deauzat of the Jefferson Parish Sheriff's Office Crime Scene Unit was called to process the scene. He arrived about 11:14 p.m., took pictures of the victim, the broken knife, and the crime scene.
Following his interview with police, Mr. Beyer was released to go to the hospital. Mr. Beyer received four stitches to the inside of the cut over his eye and nine stitches to the outside of the cut.

DISCUSSION
Defendant first argues on appeal that the trial court erred in finding him competent to stand trial. He contends that Dr. Mancuso, the examining psychiatrist, indicated that defendant only sometimes understood reality. Based on this supposition, defendant alleges that he could neither understand the proceedings against him nor assist in his own defense.
A legal presumption exists that the defendant is sane and responsible for his actions. LSA-R.S. 15:482. Hence, the defendant has the burden to establish by a preponderance of the evidence his incapacity to stand trial. State v. Howard, 98-0064 (La.4/23/99), 751 So.2d 783, 791-792, *338 cert. denied, Howard v. Louisiana, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). See Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).
In the recent Louisiana Supreme Court decision in State v. Bridgewater, 00-1529 (La.1/15/02), ___ So.2d ___, 2002 WL 47169, 2002 La. Lexis 23, the court discussed the issue of capacity to stand trial:
La.C.Cr.P. art. 641 provides that `mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.' The two-fold test of capacity to stand trial is whether the defendant: (1) understands the consequences of the proceedings, and (2) has the ability to assist in his defense by consultation with counsel. While a court may receive the aid of expert medical testimony on the issue of competency to proceed, the ultimate decision of capacity rests with the trial court.... A reviewing court owes the trial court's determination on these matters great weight, and the trial court's ruling will not be disturbed on appeal absent a clear abuse of discretion.
State v. Bridgewater, 00-1529, at pp. 21-23, ___ So.2d at ___ _ ___ (citations omitted).
In the lead case on mental capacity, State v. Bennett, on reh'g, 345 So.2d 1129, 1138 (La.1977), the Louisiana Supreme Court discussed factors to be considered in determining whether the accused is aware of the nature of the proceedings against him and his ability to assist in his defense:
Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understands the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
State v. Bennett, 345 So.2d at 1138.
In the present case, defense counsel filed a Motion to Appoint Sanity Commission on May 10, 2001, wherein he alleged the following:
Mr. Sullivan may have an extensive psychiatric history. I am not sure that Mr. Sullivan understands the seriousness of his charges.
The court granted the defendant's motion and Dr. Donna Mancuso and Dr. Anita Snow were appointed to examine the defendant. The physicians evaluated the defendant on June 13, 2001.
A competency hearing was conducted on June 28, 2001. At the time of the hearing, Dr. Donna Mancuso, an expert in psychiatry, was called to testify. According to Dr. Mancuso, she met with the defendant *339 for an hour-and-a-half for purposes of evaluation. Defendant's medical records were not presented for review. Dr. Mancuso also interviewed the defendant's mother in order to secure a history of the defendant's mental condition.
With regard to the defendant's history, Dr. Mancuso testified that the defendant's mother had advised her that the defendant had a history of psychiatric problems dating back to 1986 and he had undergone multiple hospitalizations. According to the defendant's mother, her son had been diagnosed as schizophrenic. The defendant's mother told Dr. Mancuso that her son had been fine until 1986. Since then, defendant's mother found her son to be isolated, depressed, paranoid, suspicious of neighbors and persons who came to the house with whom he is not familiar. Dr. Mancuso also testified that the defendant's mother told her that her son sometimes thought that people were not from this state and sometimes he thought his name was "Jason." Dr. Mancuso relayed the concerns that the defendant's mother had for her own safety because of defendant's violent outbursts, when he would throw things and "trash the house."
In interviewing the defendant, Dr. Mancuso found he was co-operative but guarded about his prior mental history. He refused to sign a release for his medical records. He also admitted to not taking medicines prescribed for him because "they disagreed with him." She noted that his appearance was disheveled, clothes were dirty and he had bad teeth and nicotine stains on his fingers.
Dr. Mancuso presented the defendant with a number of questions to test his comprehension and understanding of reality. He knew his age, was able to recall three out of three words immediately, could recall numbers forward and backwards, knew the current and past U.S. Presidents, was able to determine commonality of items as well as differences of items and was able to explain abstract thoughts. The examining physicians found defendant to be neither homicidal nor suicidal. He also denied thought broadcasting, thought blocking or insertion. Additionally there was no evidence of delusions, paranoia, grandiosity or personalized delusions.
The physicians also asked defendant numerous questions concerning his understanding of the legal process and the charges against him. In this regard, defendant was aware of his current legal situation and its seriousness. He realized that the charge could involve jail time. He was able to explain the role of the judge, prosecutor and defense attorney. Defendant was also able to explain the difference between being guilty, not guilty and not guilty by reason of insanity. Additionally, defendant manifested the capacity to protect himself and use his legal rights. He understood his right to appointed counsel, his right to remain silent, and the concepts of alibi, self-defense and mistaken identity. Defendant also understood the range of verdicts, what a conviction meant, and what was meant by probation.
The physicians also examined the defendant regarding his capacity to assist in his defense. In this regard, he was able to recall and relate facts pertaining to his actions on the date in question. He also demonstrated an ability to locate and examine witnesses, knew what it meant to be a character witness, was capable of maintaining a consistent defense and aiding in any distortions or misstatements by others, knew what it meant to tell a lie and that there were sanctions for this. Additionally, defendant demonstrated an understanding of a plea bargain and probation, could testify relevantly and be cross-examined if need be. He also understood *340 that if someone testified, that person would be subject to cross-examination. He evidenced the capacity to maintain the proper decorum in the courtroom and to withstand the stresses incident to waiting for trial and going through trial.
Dr. Mancuso concluded that the defendant suffered from paranoid schizophrenia and alcohol dependency. She characterized the condition as a disturbance about understanding reality. She testified that the condition fluctuates at times, in that sometimes the patient is stable and sometimes he is delusional or suffers from hallucinations. The condition is treated with anti-psychotic medications. It was her expert opinion that, at the time of her evaluation, defendant had the capacity to understand the proceedings against him and to assist in his own defense. She also stated that, at the time of the evaluation, defendant did not impress her as being out of touch with reality. Dr. Mancuso recommended that defendant receive psychiatric evaluation and evaluation for alcohol dependency while in jail.
Following Dr. Mancuso's testimony, the trial judge ruled that the defendant was capable of understanding and assisting in his own defense. Defense counsel objected to the ruling of the court.
Although the defendant argues on appeal that Dr. Mancuso indicated that defendant only sometimes understood reality, this assertion is not supported by the record. During cross-examination of Dr. Mancuso, the following occurred:
DEFENSE:
Your testimony stated that he [defendant] understands reality at certain times. Do we know at what time he understands reality?
DR. MANCUSO:
I would like to clarify that. I was describing schizophrenia in general, and I was not referring in particular to Mr. Sullivan. He did not give indication that he was out of touch with reality when we interviewed him.
(Emphasis added).
Additionally, the trial judge's ruling on the issue of competency is fully supported by the record. The results of the lengthy and comprehensive psychiatric examination of defendant, as embodied in the competency report and testimony of Dr. Mancuso, clearly demonstrate the fact that the defendant understood the consequences of the proceedings and was able to assist in his defense by consultation with counsel.
In this case, defendant has failed to demonstrate an abuse of the trial judge's discretion. See State v. Bridgewater, supra. Under these circumstances, the trial judge correctly concluded that defendant has the capacity to stand trial.
This assignment of error is without merit.
Defendant next contends that the sentence imposed is constitutionally excessive and that the trial judge failed to comply with LSA-C.Cr.P. art. 894.1. In mitigation, he argues that he has no prior criminal convictions and that he suffers from schizophrenia. He disputes the trial judge's reason given at sentencing that he is an "extreme and escalating danger to his community."
At the time of sentencing, defendant made a statement to the court wherein he apologized for the "wrong," acknowledged that he had inflicted a cut above the victim's eye, and sought leniency from the court based on his good behavior in jail.
Thereafter, the trial court judge gave the following statement before sentencing the defendant.
THE COURT:

*341 Okay. Mr. Sullivan's history as reflected in the trial and the documentation is one of mental difficulties, which are probably the cause of an escalating type of violent behavior; which has visited itself upon his neighbors and his entire neighborhood for a long time. This has been going on for a long time, and he's been living with his Mother throughout that time.
While one would wish that the civil system would have taken care of Mr. Sullivan's mental difficulties before he became involved in the Criminal Justice System, that did not happen; and that is the failure of the system. However, we are where we are today. And today Mr. Sullivan has been convicted. Mr. Sullivan poses an extreme and escalating danger to his community. And therefore it is the sentence of this Court that Mr. Sullivan serve ten years at hard labor with credit for time served.
Thereafter the defendant objected to the sentence as excessive.
Defendant did not file a motion for reconsideration of sentence in the trial court but, rather, only objected to the sentence as excessive at the time of sentencing. LSA-C.Cr.P. art. 881.1. Under these circumstances, the sentence will be reviewed only for constitutional excessiveness. State v. Mims, 619 So.2d 1059, 1059-1060 (La.1993).
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 821, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lassere, supra. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Id.
In State v. Knightshed, 00-1410 (La. App. 5 Cir. 3/28/01), 783 So.2d 501, this Court discussed the considerations for evaluating a trial court's sentencing discretion:
Three factors are considered in reviewing a trial court's sentencing discretion: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
Maximum sentences are reserved for those cases involving the most serious offenses and worse offenders. State v. Badeaux, 01-406 (La.App. 5 Cir. 9/25/01), 798 So.2d 234, 239.
This defendant was found guilty of aggravated battery, a crime that carries a possible sentence of up to ten years of imprisonment with or without hard labor and a possible fine of up to $5,000. LSA-R.S. 14:34. Defendant was sentenced to ten years at hard labor and no fine was imposed.
The judge who imposed sentence had presided over the competency hearing and conducted the bench trial in this case.
The victim in this case, Mr. Beyer, was attacked without provocation and sustained bruises to his arm and an extensive cut over his left eye. This 60-year-old *342 neighbor of the defendant required hospital care wherein he received four stitches inside the wound and nine outside of the wound. The testimony by an eyewitness, Ms. Brown, indicates that were it not for her diligence and assistance, the victim may have been stabbed full force in his back. The forceful use of the knife during the attack resulted in the handle of the knife breaking away from the blade.
The record indicates that, although defendant has no prior convictions, he has three adult arrests. He has a long history of mental illness including several hospitalizations. At the time of sentencing, the judge considered six letters submitted to the court from neighbors of the defendant, wherein they expressed fear for their safety as a result of defendant's irrational and often violent actions.
Contrary to defendant's assertion at the time of his conviction, no medical records were presented to the court for review at sentencing. At trial, defendant's explanation of his actions indicates a sense of paranoia. Defendant testified that he attacked the victim because he assumed the victim had something against him and because the victim brought people by the driveway. He also said that the victim "just wasn't like he used to be with me, and I just noticed that people were coming back and forth and kind of looking at me conspicuously, and I wasn't doing anything wrong."
This Court has previously sustained the maximum sentence for first time offenders on the conviction of aggravated battery. State v. Knightshed, supra; State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1070.
In State v. Bacuzzi, supra, a similar argument was made, namely that a ten-year sentence was excessive because the defendant was a first offender and suffered from mental illness (i.e., bi-polar disorder). In rejecting the argument, this Court found that these factors were taken into consideration by the trial judge and weighed with the violent nature of the act and severity of the injuries. This Court concluded the sentence was not an abuse of discretion nor was it constitutionally excessive. State v. Bacuzzi, 708 So.2d at 1070.
In this case, the victim's injuries were severe and could have been life threatening were it not for the quick action of the victim's neighbor and wife. The defendant has a history of threatening and violent actions against those in his neighborhood. Although he suffers from a mental illness, he knew that his assault was wrong and he admitted to intentionally attacking his neighbor without provocation. The trial judge was fully aware of the defendant's mental state and apparently considered this factor in sentencing defendant. Under these circumstances, we fail to find that the trial judge erred in imposing the maximum sentence.
Appellant requests, pursuant to La. C. Cr.P. art. 920, a review of the record for errors patent: any error discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals one error patent in this case.
At the sentencing of the defendant, the trial court judge failed to advise the defendant of the prescriptive period provided for the filing of applications for post-conviction relief, under LSA-C.Cr.P. art. 930.8. Accordingly, we hereby instruct the trial judge to correctly advise the defendant of this fact by sending him *343 appropriate written notice within ten days of this Court's opinion and to file written proof in the record that the defendant received this notice. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212.

CONCLUSION
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant, David P. Sullivan, are affirmed. Additionally, the case is remanded to the trial court with instructions as previously stated herein.
AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.