FREDERICKA HOMBERG WICKER, Judge.
1¡^Defendant, Desmon Stewart, appeals his conviction and sentence for aggravated battery in violation of La. R.S. 14:34, claiming that his ten-year sentence is unconstitutionally excessive. For the following reasons, we affirm.

STATEMENT OF THE CASE

On January-13, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant with the attempted second degree murder of Dillon Morgan in violation of La. R.S. 14:27:30.1 (count one). On March 16, 2015, the Jefferson Parish District Attorney filed an amended bill of information additionally charging defendant with , the attempted armed robbery of Dillon Morgan “while armed with a dangerous weapon, to wit: a handgun” in violation of La. R.S. 14:27:64 (count-two).
On May 15, 2015, a twelve-person jury found defendant guilty of the responsive verdict of aggravated battery in violation of La. R.S. 14:34 as to count Lone and not guilty as to count two. On May 27, 2015, the trial court sentenced defendant to ten years at hard labor.[1] Defendant subsequently filed a motion to reconsider sentence, which the trial court denied. This timely appeal follows.[2]

FACTUAL BACKGROUND

On the night of October 29, 2013, Deputy Dylan Pabst, a patrol officer with the Jefferson Parish Sheriffs Office, arrived at 2001 Oak Creek Road to investigate reports of a shooting. Upon his arrival, other officers rendered aid to the victim lying in the street adjacent to an apartment complex while he patrolled the area searching for the fleeing suspect to no avail.. Deputy Pabst accompanied the victim in. the ambulance to the hospital. While in the ambulance, he questioned the victim, who could not. speak, about the facts surrounding the shooting utilizing .a “thumbs up” and “thumbs down” communication system. Deputy Pabst testified that he asked the.victim if he knew the person who shot him, to which the victim responded affirmatively with, a “thumbs up” signal. Deputy Pabst gave the victim a pen and paper, on which the victim wrote *404 defendant’s name, identifying him as the shooter. He further asked if the shooting was the result of a “drug rip”, to which the victim responded affirmatively with a “thumbs up” signal. Deputy Pabst testified that he suspected the crime to be drug-related because the apartment complex where the shooting occurred is not a high crime area.
The victim was transported to University Hospital where he underwent multiple surgeries, including a jaw reconstruction surgery.[3] Detective Goff, a homicide detective, was assigned as lead detective to investigate the shooting Rbecause the officers anticipated that the victim would die and that the homicide division would be involved. She went to the hospital to interview the victim, who was on a ventilator and still could not speak. At the hospital, the victim identified defendant in a photographic lineup as the individual who shot him.
From the scene, detectives located a 9mm casing, a baseball cap (later identified as the victim’s), and a tooth or “tooth-like material” (identified as the victim’s). Officers- conducted a search, pursuant to a warrant, during which officers recovered a handgun located in a shoebox in defendant’s bedroom closet. Jene Rausch, accepted as an expert in firearms and tool-mark identification, testified that the 9mm casing found at the scene matched the gun found in defendant’s bedroom closet. The gun found in defendant’s closet was in the cocked position with the magazine loaded, which she testified was not a safe way to store the weapon because the slightest amount of pressure may have triggered the weapon to fire.
Defendant and the victim provided conflicting testimony concerning the events leading up to the shooting. The victim, Dillon Morgan, testified at trial that he and defendant attended high school together and that defendant contacted him through Facebook to purchase marijuana. The two met at a location of defendant’s choice, in the parking lot of the apartment complex on Oak Creek Di’ive where defendant’s grandmother resided, and decided that “the deal” should take place in the victim’s car. The victim testified that he showed defendant the marijuana and then asked defendant to show him the money. He testified that defendant then pointed a gun in his face. At that moment, the victim noticed a vehicle approaching with headlights. He paused for a moment and then decided to exit his vehicle and run away. He testified that he ran to the other vehicle and hit the other vehicle’s window while screaming, “he has a gun,” and attempted to escape. |fiHowever, the victim testified that he only took a few steps before he was shot and dropped to the ground.[4]
Defendant testified at trial that he needed money to have his neck tattoo removed in order to join the United States Army. He contacted the victim, who he knew from high school as someone who sold drugs, to purchase marijuana to resell for a profit. Defendant testified that he met the victim in the parking lot of the apartment complex to conduct a marijuana transaction. He testified that he gave the victim the money and, as the two men sat in the car, the victim received a call on his cell phone and provided an unknown third-party their location. He stated that the *405 unknown third-party drove up and the victim handed the money to the third-party. The victim then handed defendant a backpack containing marijuana but defendant testified that the'backpack did 'not contain the agreed upon amount of marijuana. He testified that the two began to argue and then tussle over the backpack. Defendant testified that, during the struggle, the gun began to fall out of his pants. At some point, defendant tried to push the gun away but the gun accidentally fired and dropped to the ground. Defendant testified that he was scared and that his immediate reaction was to pick up the gun and run through the apartment complex to his grandmother’s home.[5]
IfiThe 9-1-1 calls were played for the jury at trial and reflect that a black male, with a white t-shirt, was chasing a white male with a baseball cap, from the apartment complex parking lot to the street when a gunshot was heard. The 9-1-1 calls further reflect that the black male fled on foot through the apartment complex and that the victim was lying in the street unable to speak.

DISCUSSION

On appeal, defendant challenges his ten-year sentence, arguing that his sen-fence is unconstitutionally excessive. Defendant claims that the trial judge failed to consider La. C.Cr.P. art. 894.1 and erred in imposing the maximum sentence without consideration of all mitigating factors, including the fact that defendant' is a first-time offender with no prior criminal history.
On May 27, 2015, the trial judge sentenced defendant to ten years imprisonment at hard labor. At the sentencing hearing, defendant testified that the shooting was accidental and that he never intended to shoot the victim. Defendant’s grandmother, Ms. Cassandra Johnson, testified that defendant is a good boy, who was in college and held a job at the time of the shooting. She testified that the shooting was accidental and that defendant is a loving person who would never intentionally kill another person. She testified that defendant was in the last stage of the process to become a member of the armed forces with the United States Army at the time of the shooting.
The victim also testified at the sentencing hearing. The victim testified that the injuries he sustained from the shooting *406 affected him and his family emotionally and financially, as he incurred substantial medical bills resulting from his hospitalization and subsequent rehabilitation. . He testified that he had multiple> surgeries following the shooting, including a jaw reconstruction surgery, and that ^certain weather temperatures or conditions still affect the hardware in his jaw. The victim testified that he had to relearn how to walk, talk, and eat and will be unable to play sports again. He further testified that, since the accident, -however, he is employed and has .tried to move on with his life.-
The record reflects that, in sentencing defendant to the ten-year maximum term of imprisonment for'his' aggravated battery conviction, the trial judge stated that she considered La. C.Gr.P. art. 894.1 and the relevant aggravating and mitigating factors. The trial judge found that defendant “has no prior criminal history, and that is a major mitigating factor.” However, the trial judge also found that defendant shot the unarmed victim as he was attempting to flee and lacked any regard for the safety of others in the vicinity as he chased the victim into thé street and fired a weapon. The trial judge acknowledged that defendant changed his story to investigating officers multiple times concerning the facts surrounding, the shooting to correspond with new evidence as it was presented to him. The trial judge found that defendant has never' taken responsibility for his actions, despite the independent 9-1-1 calls reflecting that the victim was being chased at the time he was shot. The trial judge found that “any lesser sentence would deprecate the seriousness of the defendant’s crime.”
On June 25, 2015, defendant filed a motion to reconsider sentence, in which he argued generally that his ten-year sentence was “unfair” and “unconstitutionally excessive.” On . appeal, defendant claims that the trial judge failed to consider La. CiCr.P. art. 894.1 and to adequately weigh the major mitigating factor that defendant is a first-time offender.' In his motion to reconsider sentence, defendant did not claim that the trial judge failed to comply with 894.1 in imposing his ten-year sentence. La. O.Cr.P. art. 881.1(E) provides that “[fjailure to make' or file a motion to reconsider sentence or to. include a specific ground upon which a motion | Rto reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.” Because defendant failed to raise these issues in his motion to reconsider sentence, he is precluded from raising these issues on appeal. See State v. Hernandez-Zuniga, 11-378 (La.App. 5 Cir. 12/13/11), 81 So.3d 129, 134, writ denied, 12-0028 (La.4/20/12), 85 So.3d 1268. Therefore, defendant is limited to a bare review of his sentence for constitutional excessiveness. State v. Davis, 13-52 (La. App. 5 Cir. 8/27/13), 123 So.3d 751,755; State v. Carter, 07-270 (La.App. 5 Cir, 12/27/07), 976 So.2d 196, 202; State v. Wilkinson, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, 771, writ denied, 00-3161 (LaTO/12/Ol), 799 So.2d 494.[6]
*407 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Horne, 11-204 (La. App. 5 Cir. 2/14/12), 88 So.3d 562, 569, writ denied, 12-0556 (La.6/1/12), 90 So.3d 437; State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. The trial judge is afforded broad discretion in sentencing and a reviewing court may not set aside a sentence for. excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); State v. Berry, 08-151 (La.App. 5 Cir. 6/19/08), 989 So.2d 120,131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767; State v. Pearson, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
In reviewing a sentence for ex-cessiveness, an appellate, court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992). Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Falkins, 04-250 (La.App. 5 Cir. 7/27/04), 880 So.2d 903, 911, writ denied, 04-2220 (La.1/14/05), 889 So.2d 266 and writ denied sub nom. State ex rel. Simms v. State, 04-2171 (La.5/20/05), 902 So.2d 1045.
A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, 958. On re-view, the issue is whether the trial judge abused 'her great discretion, not whether another sentence might have been more appropriate; State v. Pearson, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656; State v. Horne, 11-204 (La.App. 5 Cir. 2/14/12), 88 So.-3d 562, 569.
‘Defendant’s conviction for aggravated battery, in 'violation of La. R.S. 14:34, is punishable by imprisonment for not more than ten years in addition to a fine'not to exceed $5,000.00. Although the trial judge sentenced defendant to the ten-year maximum term of imprisonment, she did not sentence defendant to the maximum penalty under the statute as she did not impose the maximum permissible fine. See State v. Richardson, 01-239 (La.App. 5 Cir. 6/27/01), 790 So.2d 717, 720.
|1flThe imposition of a sentence, although within the statutory limits, however, may still violate a defendant’s constitutional right against excessiye punishment. ' State v. Scie, 13-634 (La.App. 5 Cir. 1/15/14), 134 So.3d 9,12. In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider the nature of the crime, the nature and background of the. offender, and the sentences imposed for similar crimes by other courts. Horne, 88 So.3d at 569.
Concerning the first factor, the nature of the offense, aggravated battery is listed as a crime of violence under La. R.S. 14:2(B)(5); see also State v. Thomas, 06-654 (La.App. 5 Cir. 1/16/07), 951 So.2d 372, 380. Further, the trial judge found that defendant chased an. unarmed victim through a residential area, with lack of regard for others’ safety, and shot him in the street during the course of a drug transaction. The testimony at trial reflects that the victim’s injuries were signif *408 icant and that, for a period of time, investigators believed his death was imminent. The victim was hospitalized for a significant period of time and his rehabilitation required him to relearn to walk, talk, and eat.
Second, regarding the nature and background of the offender, the record reflects that defendant is a first-time offender with no prior criminal history. The trial judge found that defendant’s lack of criminal history was a “major” mitigating factor, which she considered in imposing defendant’s ten-year sentence.
Finally, regarding sentences imposed by this and other courts, this Court has generally upheld maximum sentences for aggravated battery convictions even though the offenders had no prior convictions, where the sentence is proportional to the severity of that offense in light of the injuries to the victim. See State v. Williams, 08-556 (La.App. 5 Cir. 1/13/09), 8 So.3d 3, 8; State v. Richardson, 00-134 (La.App. 5 Cir. 9/26/00), 770 So.2d 454; State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065; State v. Sullivan, 02-35 (La.App. 5 Cir. 4/30/02), 817 So.2d 335.
Under the facts of this case — where the evidence reflects that (1) defendant arrived to a drug transaction armed; (2) defendant shot at the unarmed victim while he chased him through a parking lot and onto a public street; and (3) the victim, who investigators determined was likely to die, was hospitalized and required significant rehabilitation — we find the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.

ERRORS PATENT

We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990), and have found no errors patent.

AFFIRMED

. The trial court further ordered that defendant pay a $150.00 fee to the Jefferson Parish Sheriffs Office; a $45.00 fee to the Indigent Defender Board; and a $750.00 fee to the Jefferson Parish Sheriff’s Office Crime Lab.

, Defendant's counsel was removed at the trial court level but was subsequently permitted to re-enroll as co-counsel at the time of trial. The trial'court and this Court found that defense counsel engaged in intentionally dilatory tactics at the trial level. This Court, on March 28, 2016, issued an Order for defense counsel to show cause why he should be permitted to represent defendant on appeal. After the filing of a brief in support of his competency, this Court issued an order, on April 1, 2016, finding defense counsel competent to represent defendant in this appeal.

. Dr. Alan Marr, a critical care surgeon, testified that the victim could have died from his injuries.

. The victim also testified that he is currently enrolled in the state’s diversion program but that no inducements or promises have been made in exchange for his participation in that program.

. This testimony differs significantly from defendant’s recorded statements provided to detectives in video-recorded interviews on the night of the shooting. Defendant initially denied any involvement in the shooting. He stated that he had not seen the victim since high school and he had never fired the weapon found in his closet (which he stated was registered to a friend). He changed his story to again deny involvement but stated that a neighborhood "dude”, known as "B”, who wore chef pants and smoked marijuana in his apartment complex, was involved in the drug transaction with the victim and had threatened to hurt defendant’s grandmother if he didn't let "B" use his phone and his gun. He again changed his story to state that "B” made defendant accompany him to a drug transaction with the victim. He said he heard a gunshot and he started running. He said minutes later, "B” knocked on his door and gave him the gun back and he put it back in his closet. After confronted with questioning concerning whether "B’s” -fingerprints would be found on the gun, he again changed his story to state that he had sold the gun to "B” five days prior to the shooting and that he saw "B” shoot the victim in the'street, while wearing one black glove on one hand. Defendant told investigating officers that, after he saw “B” shoot the victim in his presence, his immediate reaction was to pick up the gun and run away. He repeatedly denied shooting the victim. In his final statement to investigating officers, he admitted participation in the drug deal and stated that, as he' and the victim tussled over the backpack containing the marijuana, the victim grabbed for the gun and it accidentally fired.

. Under La.C.Cr.P. art, 894.1(C), the trial judge is not required to list every aggravating or mitigating circumstance applicable to the defendant as-long as the record-reflects that the trial judge adequately considered the guidelines of the article. The articulation of the factual basis for the. sentence is the goal of the article, not rigid compliance with its provisions. State v. Sanders, 98-855 (La.App. 5 Cir, 5/19/99), 734 So.2d 1276, 1279, writ denied, 99-1980 (La. 1/7/00), 752 So.2d 175. Nevertheless, in mis case, as discussed above, the record reflects that the trial judge did in *407 fact consider the mitigating and aggravating factors under La; C.Cr.P. art. 894.1.