PITMAN, J.
| defendant Kandie Thomas pled guilty to aggravated criminal damage to property and was sentenced to serve ten years at hard labor. She appeals, arguing that her sentence is excessive. For the following reasons, we affirm her conviction and sentence.
FACTS
On March 13, 2015, Defendant and her husband, Odis Wayne Thomas, were married, but separated. Defendant went to Mr. Thomas’s house to pick up the family dog *126 and drove her vehicle through the back door of the house and into the living room area where Mr. Thomas was sitting. He ran out of the house and down the street and noticed Defendant was chasing him, so he hid. Responding police officers found Defendant in the backyard of the house, where she demanded that Mr. Thomas be arrested because he refused to give her the family dog. Officers placed Defendant under arrest, which she resisted. The officers located Defendant’s vehicle down the street from the house and observed two handguns inside. Mr. Thomas told the officers that the guns had been locked inside a closet in his house and that Defendant was not supposed to have any guns.
On March 26, 2015, the state filed a bill of information charging Defendant with one count of aggravated criminal damage to property in violation of La. R.S. 14:55 and one count of domestic abuse aggravated assault in violation of La. R.S. 14:37.7. In a separate bill of information, the state charged Defendant with one count of violation of protective orders in violation of La. R.S. 14:79. On April 29, 2015, Defendant entered a plea of not guilty.
|2On May 28, 2015, defense counsel filed a motion requesting a sanity commission. Counsel alleged that Defendant had a history of mental illness and that she may have been insane at the time she committed the offenses. The district court granted the motion and ordered that Defendant submit to evaluations by Dr. John C. Simo-neaux and Dr. Philip Scurria in order to determine her sanity at the time of the commission of the offenses. After conducting their evaluations, both doctors filed reports of their conclusions with the district court. Dr. Simoneaux reported that Defendant could stand trial and that it was more likely than not that she understood right from wrong at the time of the alleged offenses. Dr, Scurria concluded that Defendant was aware of her actions at the time she committed the offenses and that she is able to work with her attorney to prepare her defense. At a hearing on January 6, 2016, the district court ruled that Defendant was competent to assist in her defense and to stand trial.
On February 18, 2016, Defendant appeared in court to withdraw her prior not guilty pleas. The state noted that the parties agreed, with Judge Terry Doughty’s concurrence, that Judge James Stephens would hear and accept Defendant’s guilty plea and that Judge Doughty would preside over the sentencing. The state advised the district eourt that, in exchange for Defendant’s guilty plea as to the charge of aggravated criminal damage to property, it would dismiss the charge of domestic abuse aggravated assault and agree to a sentence cap. Following a guilty plea colloquy, the district court found that Defendant’s guilty plea was knowingly and voluntarily made, and it accepted her plea of guilty. Judge Stephens ordered a presen-tence investigation (“PSI”) report and noted that Judge Doughty would preside over sentencing. The state then advised the district court that |athe sentence agreement was for a sentence cap of ten years at hard. labor. The state then dismissed the charges of domestic abuse aggravated assault and violation of protective orders. Judge Stephens ordered those matters dismissed, but stated that he was “not executing the plea agreement, that will be for Judge Doughty to do.”
Defendant appeared for sentencing on March 9, 2016, before Judge Doughty. The district court stated that it had reviewed the PSI report, which detailed Defendant’s criminal history, consisting of two prior arrests for offenses against her husband. In July 2008, Defendant was arrested after discharging a handgun in the direction of Mr. Thomas. She was charged with aggra *127 vated battery and discharge of a firearm. She pled guilty to the reduced charge of aggravated assault and paid a fine, and the charge for discharge of a firearm was nolle prossed. On February 13, 2015—one month before the instant offense—Defendant was arrested for firing a handgun. Mr. Thomas told law enforcement officers that he was standing on a driveway and speaking to Defendant’s sister about company paperwork when Defendant came out of the house and pointed a gun at him and fired it. Defendant told , law enforcement that she fired the gun into the air over Mr. Thomas’s head because she wanted him to leave the area. Defendant was charged with aggravated assault with a firearm, and the charge was still pending when the PSI report was compiled.
In his victim’s statement in the PSI report, Mr. Thomas indicated that probation rather than incarceration would benefit Defendant. He explained that she needs long-term counseling and medication for her mental health issues. He noted that Defendant’s behavior had become worse within the past four to five years and explained that she has trouble controlling her Danger and. aggression and suffers from severe mood swings. He stated that she is manipulative and intelligent enough to use her words to control people and that she becomes aggressive when her manipulation fails to work. He further stated that he did not seek restitution for damage to the vehicle and the house and that he paid for the repairs from their joint banking account. He offered to help pay for Defendant’s treatment and stated that, if she attends counseling and takes her medication, she could be productive again.
In her statement for the PSI report, Theresa Smith, Defendant’s sister, stated that Defendant suffered from seizures and observed that her seizure medication, Kep-pra, caused her . to behave strangely. Ms. Smith noted that Defendant recently began taking lithium and that it had “made a big difference” in her behavior. Ms. Smith believed that the seizures, problems with medication and distress caused by the recent deaths of Defendant’s mother .and previous husband overwhelmed Defendant. She indicated that incarceration would not help Defendant and that probation would help her stay on her medication.
In her statement for the PSI report, Tracy Hanson, Defendant’s sister, reported that Defendant had never been a violent- person until her seizures began. Ms. Hanson noted that Defendant had benefited from taking lithium. She stated that incarceration would not. help Defendant because she needs to meet with a doctor on a regular basis. She opined that Defendant knew her actions were wrong, but that the stress in her life was more than she could bear.
In statements for the PSI report, Winnsboro Chief of Police George Wilhite recommended a “significant” hard labor sentence due to Defendant’s history of violence and his concern for the safety of the residents of |fiWinnsboro. Franklin Parish Sheriff Kevin Cobb recommended a “substantial” hard labor sentence considering Defendant’s past violent behavior and propensity for future violence and his concern for the residents of Franklin Parish.
At the sentencing hearing, Defendant’s husband and sister testified on her behalf. Mr. Thomas stated that he and Defendant had been married approximately 20 years, but that they were going through a divorce and were living separately at the time of the offense. He noted that, when Defendant drove her vehicle into his house, it stopped about 12 feet from where he was sitting. He testified that the firearms found in her vehicle were not in the vehicle when she drove into the house and that she took them from his house. After De *128 fendant drove into the house, he did not stay and talk to her, but, instead, left to avoid further confrontation. He admitted he was afraid of what might happen. He also testified about two previous incidents involving Defendant. In 2008, Defendant discharged a firearm in his direction, but he believed that it discharged accidentally. He stated that, one month prior to the instant offense, Defendant shot a gun in his direction while he was several hundred feet away from her. He asked that the district court not incarcerate Defendant, but, instead, that she receive a sentence of probation so that she can receive medical treatment. He stated that he felt partially at fault for the incident that occurred because his infidelity triggered Defendant’s aggression. He noted that Defendant’s attitude had changed during her year of imprisonment. He also stated that he had ' not asked for restitution for damage to the house.
Ms. Smith testified that she works for the trucking company Defendant and Mr. Thomas own together. She recounted recent troubling |fievents in Defendant’s life, including that one of Defendant’s previous husbands passed away in the summer of 2014, that Mr. Thomas left her in November 2014, that Defendant attempted suicide in December 2014, that Defendant had several grand mal seizures, that their sister passed away in January 2015 and that Defendant’s other previous husband passed away three days later. She stated that those events led up to Defendant shooting a gun in her and Mr. Thomas’s direction in February 2015. She believed that Defendant was upset with the amount of time she was talking to Mr. Thomas and fired the gun to get their attention.
Ms. Smith further testified that, after Defendant began taking lithium in March 2015, two days before she was arrested, she noticed a “big change” in that Defendant was calmer in her responses to situations. She opined that Defendant’s actions were an attempt to get Mr. Thomas’s attention. She asked the court for leniency and that Defendant receive a sentence of probation, stating that she was concerned about Defendant’s health during incarceration and that Defendant would not receive the treatment she needs to continue improving.
Defendant testified on her own behalf and stated that she is 58 years old, has two daughters and six grandchildren. She admitted that, during her year of incarceration, she had considered her actions and she took full responsibility for them. She asked the court for leniency in sentencing so that she could have the opportunity to obtain the counseling and medication she needs to be a productive member of society, noting that she had learned to control her temper. She admitted that she had believed she could not live without Mr. Thomas and had abandonment issues, but that she has since learned that she is capable of living by herself.
|7The district court detailed Defendant’s social history, which included running away from home as a child and, at age 13, being placed in a reformatory school. She completed the tenth grade and then ran away from the reformatory school and became pregnant. She married the father of the child and had another child before divorcing. She married and divorced another man before marrying Mr. Thomas in 1996. She and Mr. Thomas owned a trucking company together. They separated in 2014. Defendant was diagnosed with having grand mal seizures in 2007, and she attempted suicide in 2014 with an overdose of Klonopin. She denied a history of drug or alcohol abuse.
As mitigating factors, the district court noted that Defendant is a 58-year-old first felony offender. It noted that she has a *129 history of mental health issues, but a sanity commission determined that she was competent to stand trial. It stated that the victim, Mr. Thomas, does not want her to receive a prison senténce and did not seek restitution for the $17,200 worth of damage to the-house and vehicle.
The district court also detailed the applicable aggravating circumstances, stating that, although this was Defendant’s first felony conviction, she has committed three violent crimes against Mr. Thomas, any one of which could have killed him. It noted that two of the offenses occurred within a one-month period and that all of the offenses involved the use of a dangerous weapon, i.e., a gun or á vehicle. It further stated that Defendant has a significant anger control issue and noted that she did not show much remorse, other than saying that she has changed. It found that her actions resulted in a significant economic loss, i.e., $17,200 in damages.
| «Considering the three violent acts Defendant had committed, the district court did not believe that Defendant would likely respond to probationary treatment. It found that Defendant was in need of correctional treatment that can be provided in a custodial environment. It also noted that Defendant received a substantial benefit from the plea agreement, with a sentence cap of 10 years, rather than the statutory maximum of 15 years at hard labor. It stated that, absent the sentence cap,, it would have sentenced Defendant to more than 10 years.
Accordingly, the district court sentenced Defendant to 10 years at hard labor with credit for time served and recommended that she receive mental health treatment. It advised Defendant that she had 30 days to file a motion to appeal and two years to seek post-conviction relief.
On March 21, 2016, Défendant filed a motion to reconsider sentence. She argued that her sentence was excessive because the district court considered a charge that is still pending, i.e., the February 2015 aggravated assault with a firearm charge. She also noted that she was a first offender, that her husband was not injured and that her husband admitted that he contributed to her mental state due to his infidelity;
A hearing on Defendant’s motion to reconsider sentence was held on July 13, 2016. Mr. Thomas again testified on Defendant’s behalf and expressed that, his actions contributed to Defendant’s anger. The defense attorney advised the court that the February 2015 aggravated assault with a firearm charge had' not yet been resolved because those involved were waiting to learn of the outcome of this case. The district court noted that Defendant had tried to kill Mr. Thomas three times and that, regardless of Mr. Thomas’s contribution to angering Defendant, that did not justify | ¡(Defendant's actions of driving her vehicle into his house. It found no justification to reduce Defendant’s sentence and denied her motion.
Defendant appeals.
DISCUSSION

Review of Sentence

The initial inquiry in this case is whether Defendant is entitled to a review of her claim of excessive sentence, which was imposed in conformity with a plea agreement with a sentencing cap.
A defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. La. C. Cr. P. art: 881.2(A)(2). Where a specific sentence or a sentencing cap has been agreed upon as a consequence of a plea bargain, a sentence imposed within *130 the agreed range cannot be appealed as excessive if that right has not been specifically reserved. State v. Taylor, 44,205 (La. App. 2 Cir. 5/13/09), 12 So.3d 482. However, when the right to appeal has .been mentioned by the district court during the plea colloquy, even though there is an agreed sentence or sentence cap, the defendant’s sentence may be reviewed. Id.
Prior to Defendant’s guilty plea, the parties advised the district court that they had negotiated a plea agreement with a sentencing cap. During the guilty plea colloquy, the district court advised Defendant of her rights, including that she had a right to a trial by jury and, if convicted at that trial, would have the right to appeal her conviction. Defendant acknowledged that she understood that, by pleading guilty, she was waiving those rights.
At the guilty plea hearing, Defendant did not specifically reserve her right to appeal her sentencing; however, the district court did not advise her |inof this right. Accordingly, we will review the sentence.[1] See State v. Brown, 50,138 (La.App. 2 Cir. 9/30/15), 181 So.3d 170.

Excessive Sentence

In her sole assignment of error, Defendant argues that the sentence imposed by the district court is constitutionally excessive. She contends that her upper-range sentence of 10 years serves no purpose, is nothing more than cruel and unusual punishment and is greatly disproportionate to the seriousness of her offense. She states that a lesser period of incarceration with treatment for her mental health issues better meets the needs of society. She argues that, by focusing on the seriousness of the offense, the district court failed to consider several mitigating factors, including her personal history and her emotional and physical health issues. She notes that her husband’s infidelity significantly contributed to her emotional breakdown and that she suffered from seizures, depression and emotional strain. She also points out that both her husband and sister testified about the significant change in her attitude as a result of new medication. She emphasizes that no one was injured as a result of her actions. She further contends that the district court erred in considering the February 2015 incident, which has not resulted in a conviction.
InThe state argues that the district court acted within its discretion when sentencing Defendant to 10 years’ imprisonment. It notes that the imposed sentence falls within both the statutory sentencing range of 1 to 15 years and within the 10-year sentence cap. It further notes that the district court heard testimony, 'reviewed the PSI report and adequately considered the aggravating and mitigating factors before imposing Defendant’s sentence. It also contends that the district court did not err in considering Defendant’s previous arrests because a defendant’s criminal history is a relevant element for a court to consider in sentencing. It argues that Defendant’s previous ar *131 rests are especially relevant because the incidents involved the same victim and similar circumstances of her use of violence and deadly weapons against her husband.
When reviewing an excessive sentence claim, the appellate court uses a two-prong test. First, the record must demonstrate that the trial court complied with La.-C. Cr. P. art. 894.1. The trial court is not required to list every aggravating and mitigating circumstance, but the record must reflect that it adequately considered the guidelines of La. C. Cr. P. art. 894.1. State v. Smith, 433 So.2d 688 (La. 1983). The trial court should consider the defendant’s personal history and prior criminal record, the seriousness of the offense, the likelihood that the defendant will commit another crime and the defendant’s potential for rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981). The trial judge is not .limited to a consideration of the defendant’s prior convictions but may properly review all of his prior criminal activity. State v. Russell, 40,526 (La.App. 2 Cir. 1/27/05), 920 So.2d 866, writ denied, 06-0478 (La. 9/29/06), 937 So.2d 851. The trial court is not required to assign any particular weight to any specific matters at | ^sentencing. State v. Quiambao, 36,587 (La.App. 2 Cir. 12/11/02), 833 So.2d 1103, writ denied, 03-0477 (La. 5/16/03), 843 So.2d 1130.
Second, the appellate court must determine if the sentence is constitutionally excessive. A sentence is excessive and violates La. Const, art. 1, § 20, if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. ■ .r
A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside absent a showing of abuse of discretion. State v. Square, 433 So.2d 104 (La. 1983); State v. Black, 28,100 (La.App. 2 Cir. 2/28/96), 669 So.2d 667, writ denied, 96-0836 (La. 9/20/96), 679 So.2d 430. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7; State v. Free, 46,894 (La.App. 2 Cir. 1/25/12), 86 So.3d 29.
Aggravated criminal damage to property is the intentional damaging of any structure, watercraft or movable, wherein it is foreseeable' that human life might be endangered, by any means other than fire or explosion. La. R,S. 14:55(A). Whoever commits the crime of aggravated criminal damage to property shall be fined not more than $10,000, imprisoned with or without hard labor for not less than 1 nor more than 15 years, or both. La. R.S. 14:55(B).
1 isln the case sub judice, the district court .complied with the requirements of La. C. Cr. P. art. 894.1 and considered aggravating and mitigating factors prior to imposing Defendant’s sentence. It thoroughly detailed her personal and criminal history, emphasizing its concern with Defendant’s violence, including two incidents within one month, and her use of dangerous weapons.
Defendant’s sentence of 10 years at hard labor is not constitutionally excessive'and is within the statutory range and sentencing cap. Although no one was injured as a result of the instant offense or the prior two incidents, Defendant’s violent actions show a pattern of behavior that threatens *132 human life. Her history of mental health and anger issues does not justify her acts of violence. Further, Defendant benefited from the plea agreement because her potential sentence exposure was reduced by the sentence cap and the dismissal of the charges of domestic abuse aggravated assault and violation of protective orders.
Considering the facts of this case and Defendant’s criminal history, the sentence imposed by the district court is not grossly out of proportion to the severity of the crime and does not shock the sense of justice. The district court did not abuse its discretion in imposing this sentence.
Accordingly, this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the conviction and sentence of Defendant Kan-die Thomas.
AFFIRMED.

. We note that, at the conclusion of Defendant's sentencing hearing, the district court advised Defendant of tire time limitations in which to file an appeal and to seek post-conviction relief. In State v. Pullig, 44,606 (La.App. 2 Cir. 9/23/09), 22 So.3d 1043, and State v. Fizer, 43,271 (La.App. 2 Cir. 6/4/08), 986 So.2d 243, this court determined that the district court's advisement of time limitations for appeal after the imposition of the sentence did not influence the defendant's guilty plea and, therefore, precluded the defendant from seeking review of the sentence. These cases arc distinguishable from the case sub judies because, in State v. Pullig and State v. Fizer, the district court did not mention any appeal rights during the guilty plea colloquy. In the instant case, the district court did advise Defendant that, by pleading guilty, she was waiving her right to appeal her conviction.