STATE OF LOUISIANA

VERSUS

SHAWN MICHAEL MCKINNEY

NO. 19-KA-380

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 18,159, DIVISION "B"
HONORABLE EDWARD M. LEONARD, JR., JUDGE PRESIDING

December 26, 2019

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Hans J. Liljeberg

**AFFIRMED**
    **JGG**
    **SJW**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Bridget A. Dinvaut
Briana C. Robertson

COUNSEL FOR DEFENDANT/APPELLANT,
SHAWN MICHAEL MCKINNEY
Allen J. Myles

**GRAVOIS, J.**

Defendant, Shawn Michael McKinney, appeals his convictions and sentences for aggravated battery and aggravated criminal damage to property. For the following reasons, we affirm defendant's convictions and sentences.

## PROCEDURAL HISTORY

On May 25, 2018, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant, Shawn Michael McKinney, with aggravated battery, in violation of La. R.S. 14:34 (count one), and aggravated criminal damage to property, in violation of La. R.S. 14:55 (count two). Defendant was arraigned and pled not guilty to the charged offenses on May 31, 2018.

Trial commenced before a six-person jury on February 20, 2019 and concluded on February 22, 2019 with a verdict of guilty on each count. On March 25, 2019, defendant's motion for a new trial was denied. On that same date, after waiving sentencing delays, the trial court sentenced defendant to concurrent ten-year sentences at hard labor on each count and imposed concurrent five thousand dollar fines on each count.

On April 22, 2019, defendant filed a motion for an appeal, which was granted by the trial court on April 23, 2019. On appeal, defendant argues two assignments of error:

1) trial counsel gave ineffective assistance of counsel because not only was self-defense never pled, but justification was also taken out of the jury instructions, which in turn adversely affected defendant in the outcome of the case; and

2) the trial court committed error sufficient to reverse the ruling when the judge sentenced defendant to the maximum sentences on the subject charges.

## FACTS

Corporal Daniel Materne of the St. John the Baptist Parish Sheriff's Office responded to a call regarding a shooting on March 4, 2018 which occurred in the

roadway between 198 and 202 West 2nd Street in LaPlace, Louisiana.[1]  Upon his

arrival, Corporal Materne observed blood on the door of a residence at 202 West

2nd Street and several shell casings in the roadway.  He then witnessed a black

male subject, later identified as defendant's brother, Bobby McKinney, pick up a

gun magazine which was located in front of his residence at 202 West 2nd Street.

Because it was an active crime scene, Corporal Materne ordered Bobby to drop the

magazine, which Bobby indicated belonged to him.  Bobby further informed

Corporal Materne that the firearm associated with the magazine was inside his

house.  Bobby permitted Corporal Materne to retrieve the firearm from his house

and turned it over to Crime Scene Detective Michael Schaeffer.

While on the scene, Corporal Materne was also informed by Sergeant Grant

Pierre that an anonymous person had approached Sergeant Pierre and advised him

that Shawn McKinney, defendant, "did the shooting."

Detective Schaeffer, also with the St. John the Baptist Parish Sheriff's

Office, testified regarding the collection of evidence from the crime scene.  He

explained that the firearm collected from the McKinney home located at 202 West

2nd Street was a 9 mm firearm, that there were no 9 mm casings found at the scene

of the shooting, only .40 caliber casings, and that the 9 mm firearm was later ruled

out as having been fired on the scene.  Specifically, twelve spent .40 caliber

casings and a blue baseball hat were recovered from the roadway.  Also recovered

were a projectile and a projectile jacket fragment which were located inside of a

vehicle involved in the shooting belonging to Harold George.  A second projectile

and partial projectile jacket were recovered in the street at the scene of the

shooting.  A projectile was also recovered from the shoe of the shooting victim,

---

[1] The 9-1-1 call was played for the jury.  On the tape, a woman advised the dispatcher that there were two black males, one by the name of "Shawn McKinney" and the other named "Harold," who were fighting and then gunshots were heard.  She further stated that there was a woman who left the scene crying and that she did not know if anyone had been shot.

Ariane Jacques. Photographs were taken at the scene by Sergeant Staty Lewis of the St. John the Baptist Parish Sheriff's Office who identified several bullet holes in the vehicle, including the trunk, rear bumper, and one in the rear passenger-side door. Sergeant Lewis noted that one of the photographs depicted a projectile jacket fragment on the rear passenger floorboard and a projectile on the rear driver side of the fender well. Photographs were also taken by Detective Schaeffer of the injuries defendant had sustained as a result of an altercation he had had with Harold George prior to the shooting.

Harold George testified that he knew defendant through his ex-girlfriend, Shanta White. He explained that on the evening of March 4, 2018, he and defendant had a verbal altercation while at a birthday party for one of defendant's relatives. According to Harold, defendant approached him and told him to "get the f**k up. […] I'm not going to let you young boys play with me." Harold testified that he got up and went inside to retrieve Shanta and they left the party. Harold testified that he was driving, Shanta was in the passenger seat, and Ariane Jacques, the victim, was in the back seat behind Shanta. While on their way to Shanta's house, they saw defendant walking on the side of the road. Shanta encouraged Harold to stop and talk to defendant about "the situation that happened" at the party. Harold pulled over and he and Shanta got out of the car. He testified that defendant immediately approached him and asked him what he wanted. Harold then asked defendant if he was "trying to fight" him, to which defendant replied, "yeah." When defendant stepped closer, Harold hit him. They began to fight and defendant was beaten up "pretty bad" until Shanta pulled Harold off of defendant. According to Harold, when defendant took off running, he got into his car and was driving away when he heard bullets hitting his car. When he looked in the rearview mirror, he observed defendant, who was wearing a blue baseball hat, shooting at his vehicle.

Once backseat passenger Ariane Jacques informed Harold that she had been shot in the foot, he took her to the hospital. Harold indicated that he did not call the police because he was afraid, given his altercation with defendant. While at the hospital, law enforcement was notified of the incident, and upon speaking with Harold, he informed them that he did not know who shot at his car. He admitted that he did not tell the officers the truth at that time because he was fearful he would get into trouble for the fight that had occurred. However, Harold later gave a second statement where he indicated that he and defendant had an altercation and that defendant shot at his car.

Ariane Jacques, a friend of Harold and Shanta, testified that while in the car leaving the party, Harold and Shanta were arguing. She recalled Harold telling Shanta that he felt disrespected and did not understand why he was being "spoken to in a certain way." Ariane testified that they were on their way back to Shanta's house when they saw defendant walking home and Shanta suggested they stop so defendant and Harold could "figure things out." Ariane stated that Harold stopped the car and approached defendant, recalling that their interaction began verbally at first and then escalated into a physical altercation which occurred in front of their vehicle which Harold had parked in an empty lot. According to Ariane, Harold "got the best of Shawn, knocked him out, he fell on the ground." She recalled that defendant then got up and ran towards a vehicle that was parked to the left of the lot. Ariane testified that Harold then got back in the vehicle and made a U-turn out of the lot and began driving away. It was at that time that Ariane was struck in her foot by a bullet. Ariane explained that she heard the gunshots but did not see who was firing the gun because she was in the back seat. However, she recalled that Shanta was apologizing on defendant's behalf for what happened. She further testified that she did not see Harold with any weapons that night and that they were being shot at while they drove away despite the fight being over.

Shanta White, defendant's cousin, testified regarding her close relationship with defendant. She recalled that she went to a party with Harold and Ariane on March 4, 2018, but did not recall any incident between Harold and defendant at the party. She stated that she had a lot to drink at the party, so Harold was going to drive her back to her house. Shanta stated that on their way to her house, she saw defendant getting out of a car at his house. Shanta testified that she did not speak with defendant, but recalled that an altercation between defendant and Harold ensued in a grassy area near defendant's home "from what [she] was told." She stated that Harold "got the best of" defendant, but she did not recall how the fight ended, only that she ran home after the fight and did not know where defendant went.

Shanta gave two statements to the police. In her first statement, she told the police that she did not know what happened that night. In her second statement, Shanta told the officers that she attempted to break up the fight between defendant and Harold and that she saw Harold get back into his car and saw defendant fire a gun that night. When questioned at trial regarding her second statement, Shanta testified that she did not recall identifying defendant as the shooter. She explained that her second statement was influenced by conversations she had had with her family, discussions with those involved in the altercation, information obtained from the police that defendant had confessed to the crimes, and the fact that she had been drinking heavily that night. Shanta testified that she later learned defendant had not confessed. Shanta then identified an affidavit she signed documenting that she had been coerced by the St. John the Baptist Parish Sheriff's Office who led her to believe that defendant had confessed to the crimes, which was why she gave her second statement, noting that she did not actually see what happened that night. Shanta further indicated in her affidavit that she did not

witness who was responsible for the shooting and did not witness defendant possess or fire a weapon on March 4, 2018.

Major Larry LeBlanc, commander of criminal investigations at the St. John the Baptist Parish Sheriff's Office, testified that he too responded to the scene of the shooting and that upon his arrival, he noticed a gravel parking area next to a residence at 202 West 2nd Street (the McKinney residence) where it appeared the gravel had been disturbed. Approximately thirty-five yards from that location, Major LeBlanc also observed spent casings in the roadway. While at the scene, Major LeBlanc spoke with Bobby McKinney, defendant's brother, who informed him that he would locate defendant and bring him to the Criminal Investigations Division for questioning. A couple of hours later, defendant arrived at the Criminal Investigations Division and spoke with Major LeBlanc after waiving his *Miranda*[2] rights. Defendant told Major LeBlanc that on the night of the shooting, he had attended a family party at Bot's reception hall in LaPlace and spoke to a male, whose name he could not recall. He stated that he was unsure whether he may have offended the man. Defendant explained that a short time later, he left the party with a friend, Benny Tassin, and went back to his house. Benny soon left defendant's house at which time defendant began walking across the gravel parking lot towards his cousin's house. It was at that time that a car came up behind him, and the man whom he thought he had offended that night at the party exited the vehicle, and they began fighting. Defendant stated that he was knocked to the ground and struck several times; thus, defendant retrieved a gun he had in his waistband and began firing at the man and his vehicle. He further stated that after the incident, he threw his gun in the river. Major LeBlanc testified that defendant's statement was not recorded, explaining that another detective, Katie

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Evans, was tasked with taking defendant's recorded statement, but that once defendant was advised of his rights, "things started rolling," and after Major LeBlanc's interview with defendant, defendant refused to talk.

Detective Katie Evans was assigned to the case as lead detective. She testified that she spoke to all of the witnesses and the victim. She concluded that their statements corroborated one another, as well as the evidence found at the scene of the shooting. Based on her investigation, Detective Evans determined that defendant shot at Harold's vehicle while it was driving away. Detective Evans further testified that the shell casings found on the scene were swabbed for DNA, but were never sent to the crime lab for testing due to an oversight on her part. On cross-examination, Detective Evans admitted that in her report, she noted that the anonymous source that officers originally spoke to on the scene could not be tracked down and that the information provided by the source, who was inside when the shooting occurred, did not corroborate any of the information the other witnesses provided. Detective Evans also testified that in Shanta's first statement given on the night of the shooting, Shanta told the officers that Ariane was arguing with defendant outside of the vehicle when the shooting commenced.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant argues that his trial counsel erred in his trial strategy, constituting ineffective assistance of counsel, when he failed to consider self-defense as a defense and agreed to the removal of the defense of justification from the jury instructions despite actual evidence proving the plausibility of such a defense. Specifically, defendant maintains the evidence presented at trial established that Harold George sought out defendant, drove to defendant's property, and beat him up, yet his counsel never asserted a theory of self-defense at trial. He claims the evidence at trial revealed that his only option was to fire warning shots to get Harold off of him and his property, which he

claims he was well within his rights to do under La. R.S. 14:20(C)[3] and La. R.S. 14:20(D).[4] Defendant further contends that had his counsel kept the justification defense in the jury instructions, rather than not objecting to it being removed, the jury would have decided the case differently. Accordingly, defendant concludes that his counsel's failure to plead self-defense and the act of eliminating the justification defense from the jury instructions constituted errors so prejudicial that defendant's case was adversely affected and that reversal is warranted.

The State responds that defendant's counsel's performance was not deficient, as the claim of self-defense would have negated the defense's theory that defendant was not the shooter. The State argues that defendant's counsel chose to argue that defendant was not the shooter by eliciting testimony from various witnesses regarding the conflicting statements they gave about the identity of the shooter, as well as testimony concerning the many errors in the police investigation of this matter, which the defense argued warranted a finding of not guilty. Further, the State submits that the evidence at trial did not support the claim of self-defense, contending that there was ample evidence to show that after the conclusion of the physical altercation between defendant and Harold, Harold was driving away from the scene when bullets struck the back of his vehicle. The State also argues that defendant's reliance on La. R.S. 14:20 is misplaced, as the statute pertains to justifiable homicide, and there was no homicide in this case. Finally, the State avers that defendant was not prejudiced by the removal of the justification defense from the jury instructions because there was not a substantial likelihood the jury would have come to a different result.

---

[3] La. R.S. 14:20 provides for the instances when a homicide is considered justifiable. Subsection C of La. R.S. 14:20 specifically provides: "A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force."

[4] La. R.S. 14:20(D) provides: "No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry."

It is fundamental that a criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. Effective assistance of counsel does not mean errorless counsel or counsel who may be judged ineffective on mere hindsight. *State v. Hollins*, 99-278 (La. App. 5 Cir. 8/31/99), 742 So.2d 671, 681, *writ denied*, 99-2853 (La. 1/5/02), 778 So.2d 587.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that a defendant asserting an ineffective assistance claim must show 1) that defense counsel's performance was deficient and 2) that the deficiency prejudiced the defendant. *State v. Soler*, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, *writ denied*, 94-1361 (La. 11/4/94), 644 So.2d 1055. To establish ineffective assistance of counsel, the defendant has the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. It is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on either one of the components. *State in the Interest of C.M.*, 13-128 (La. App. 5 Cir. 10/30/13), 128 So.3d 1118, 1131, *writ denied*, 13-2796 (La. 5/30/14), 140 So.3d 1172.

In order to prevail, the accused must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; specifically, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065. An alleged error that is within the ambit of trial strategy does not establish ineffective assistance of counsel because "opinions may differ on the advisability of such a tactic." *State v.*

*Singleton*, 05-634 (La. App. 5 Cir. 2/14/06), 923 So.2d 803, 811, *writs denied*, 06-1208 (La. 11/17/06), 942 So.2d 532 and 08-2386 (La. 1/30/09), 999 So.2d 753.

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, rather than by direct appeal. *State v. Taylor*, 04-346 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 595. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. *Id.* Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings. *Id.* In the instant case, the record is sufficient to allow a review of defendant's ineffective assistance of counsel claim on appeal.

It is well established that "hindsight is not the proper perspective for judging the competence of counsel's trial decisions. An attorney's level of representation is not determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La. 1987), *cert. denied*, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987) (citing *Strickland v. Washington*, *supra*). If an alleged error is part of counsel's trial strategy, it does not establish ineffective assistance of counsel. *State v. Esteen*, 02-1241 (La. App. 5 Cir. 4/29/03), 846 So.2d 167, 174, *writ denied*, 03-1486 (La. 1/9/04), 862 So.2d 978.

Here, defendant argues his counsel's performance was deficient because he failed to claim self-defense. Defense counsel's trial strategy was to assert that defendant was not the shooter, and thus, should not be found guilty of the crimes of aggravated battery and aggravated criminal damage to property. During opening statements, defense counsel argued that throughout the trial, the jury would hear three different stories from three different witnesses (Harold George, Shanta

White, and Ariane Jacques) about the events that took place on the night of the shooting while they were intoxicated. He also argued that the evidence would show there was no physical (including gunshot residue) or DNA evidence linking defendant to the shooting. He averred that defendant did not make a video recorded statement admitting to any crime and that the police work done in this case was defective.

Based on the representations of defense counsel during his opening statement, at trial, defense counsel elicited testimony from various law enforcement officers, calling into question their credibility and faulty investigation of this matter. In particular, defense counsel cross-examined the lead detective assigned to the case at length regarding her admitted error in failing to submit DNA evidence to be analyzed, failing to test defendant for gunshot residue, and the fact that the weapon used during the commission of the crime was never recovered, yet a magazine from a firearm not belonging to defendant was found at the scene of the shooting.

The defense's highlighting of the faulty police work done in this case then aided the defense into calling into question the "confession" given by defendant during the only unrecorded interview in this case. Also, with respect to the other statements which were recorded, the defense sought to discredit the three statements given by the occupants of the vehicle, noting them to be conflicting and claiming that they were unreliable. As to Shanta White, defense counsel emphasized that she provided an affidavit attesting that she was coerced into giving her original statement in which she identified defendant as the shooter. At trial, Shanta testified that her original statement was false and that she did not remember anything about the shooting because she was highly intoxicated. Defense counsel also elicited testimony from the victim, Ariane Jacques, who confirmed that she did not see who fired the shots due to her location in the back

seat of the vehicle. Finally, during Harold George's testimony, he admitted that he originally told officers that he did not know who shot at his car. Major LeBlanc also testified that there were no lights at the scene of the shooting and that the shots were fired approximately thirty-five yards from the vehicle.

It is evident from the record that the trial strategy employed by defendant's trial counsel was reasonable under the circumstances and that counsel was not deficient in not raising the claim of self-defense. Contrary to defendant's contention, the evidence presented at trial did not support a claim of self-defense to crimes of aggravated battery[5] and aggravated criminal damage to property.[6]

It is well settled that the standard of review in considering the sufficiency of the evidence to support a criminal conviction is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18; *State v. Patterson*, 10-415 (La. App. 5 Cir. 1/11/11), 63 So.3d 140, 148, *writ denied*, 11-338 (La. 6/17/11), 63 So.3d 1037. Different statutory standards exist to justify the use of force or violence under La. R.S. 14:19 and La. R.S. 14:20, depending upon whether or not a homicide results. Here, where no homicide resulted, the use of force or violence in self-defense is justified when the amount used is reasonable, and it is apparently necessary to use such force to protect oneself. La. R.S. 14:19(A); *State v. Steele*, 01-1414 (La. App. 5 Cir. 9/30/02), 829 So.2d 541, 547, *writ denied*, 02-2992 (La. 9/19/03), 853 So.2d 632.

---

[5] Aggravated battery is the intentional use of force or violence upon the person of another when committed with a dangerous weapon. *See* La. R.S. 14:33 and La. R.S. 14:34.

[6] Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, when it is foreseeable that human life might be endangered, by any means other than fire or explosion. *See* La. R.S. 14:55(A).

In a non-homicide case, the defendant has the burden of proving by a preponderance of the evidence that his actions were in self-defense or in defense of others. The defense of self-defense in a non-homicide situation requires a dual inquiry: an objective inquiry into whether the force used was reasonable under the circumstances, and a subjective inquiry into whether the force was apparently necessary. *State v. Nailor*, 10-1062 (La. App. 5 Cir. 11/15/11), 78 So.3d 816, 821-22, *writ denied*, 11-2780 (La. 4/27/12), 86 So.3d 626.

It is well established that the aggressor or the person who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. *See* La. R.S. 14:21; *State v. Howard*, 15-473 (La. App. 5 Cir. 12/9/15), 182 So.3d 360, 363. Here, it is undisputed that Harold threw the first punch in the fight with defendant. Harold testified that when he got out of his car, defendant approached him and a heated conversation ensued. He asserted that defendant stepped closer to him and that he in turn hit defendant. It was at that time that the fight between Harold and defendant commenced, after which, by all recollections, defendant was beaten up "pretty bad." However, State witnesses also testified that the fight was over when defendant got up from the ground and ran over to a nearby vehicle and at which time Harold entered his vehicle and began driving away. It was when Harold was leaving the scene that the bullets hit the back of his vehicle and backseat passenger Ariane was shot. Evidence collected from the scene and from the vehicle corroborated Harold and Ariane's testimony to this effect. Specifically, located on the scene were twelve shell casings found in the street approximately thirty-five yards away from the location of the fight. Additionally, bullet holes were located in the back of Harold's vehicle.

Based on this evidence, the altercation between Harold and defendant had ceased when defendant got his gun and shot at Harold's vehicle, which was fleeing from the scene. Thus, we find that defendant was not acting in self-defense and the force defendant used was not reasonable or necessary under the circumstances.[7]

Accordingly, because the evidence did not support a claim of self-defense, defense counsel's failure to object to the removal of the defense of justification from the jury instructions was not an unprofessional error that resulted in prejudice to defendant. As the Supreme Court explained in *State v. Miller*, 338 So.2d 678, 681 (La. 1976), an instruction on justification must be given whenever the defense is arguably supported by the evidence presented at trial. Based on the evidence presented at trial, a jury charge on this defense would not have been appropriate, as the evidence did not support the claim of self-defense and because defense counsel's trial strategy was to argue that defendant was not the shooter. The record suggests that defense counsel's agreement to the removal of the instruction on justification was strategic.

Defendant cannot now complain that counsel's performance was deficient simply because the strategy was unsuccessful. *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) ("Defendant may prevail on ineffective assistance of counsel claim relating to trial strategy ... if he can show counsel's strategy decisions would not be considered sound."). As a matter of trial strategy, defense counsel elicited testimony at trial that called into question defendant's identity as the shooter, rather than pursuing a claim of self-defense that was unsupported by the record. Accordingly, defendant has failed to show under the *Strickland* test that counsel's

_____

[7] *See State v. Rouser*, 14-0613 (La. App. 4 Cir. 1/7/15), 158 So.3d 860, where the defendant did not dispute that the elements of manslaughter were proven beyond a reasonable doubt but argued that the State failed to prove that his actions were not lawfully justified as they were done in self-defense. In *Rouser*, the defendant was involved in a physical altercation which he did not start and was beaten until he was crouched down into a ball near the door of his vehicle. The jury was presented with conflicting testimony regarding when the defendant began shooting. The Fourth Circuit found that the jury chose to credit the State's witnesses who indicated the fight had completely disbanded when the defendant began shooting, thus, finding it reasonable for the jury to conclude that deadly force was not necessary since the threat had ceased.

performance was deficient; that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms, or that the deficient performance prejudiced the defense. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues that the trial court erred when it sentenced him to a maximum sentence of ten years at hard labor and a five thousand dollar fine.[8] He contends that he was offered a seven-year suspended sentence, with three years of active probation, a one thousand dollar fine, and three hundred fifty dollars in court costs in exchange for a guilty plea, which he ultimately rejected, but was then sentenced by the trial court, after electing to go to trial, to the maximum sentence. Thus, defendant concludes that he was penalized for exercising his right to trial. He further asserts that he does not fit within the description of the most egregious of offenders and that he was not the aggressor in the altercation.

The State responds that defendant did not receive the maximum sentences as both sentences were ordered to run concurrently rather than consecutively. It further submits that the trial court, after considering the sentencing guidelines and the nature of the offenses, concluded that defendant knowingly created a risk of death and great bodily injury to more than one person and was sentenced within statutory guidelines.

Here, defendant neither objected after imposition of his sentences to their alleged excessiveness, nor did he file a motion to reconsider sentence. The failure to file a motion to reconsider sentence or to state the specific grounds upon which

---

[8] Defendant does not specify which of his two sentences he deems to be excessive. However, for purposes of this assignment, it is presumed that defendant is arguing about the alleged excessiveness as it pertains to both of his sentences given that the same sentence was imposed on each of defendant's convictions and were ordered to run concurrently.

the motion is based, limits a defendant to a review of the sentence only for unconstitutional excessiveness. La. C.Cr.P. art. 881.1; *State v. Ragas*, 07-3 (La. App. 5 Cir. 5/15/07), 960 So.2d 266, 272, *writ denied*, 07-1440 (La. 1/7/08), 973 So.2d 732, *cert. denied*, 555 U.S. 834, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008). Thus, a review of defendant's sentences is limited to a review for unconstitutional excessiveness only. *See State v. Haywood*, 00-1584 (La. App. 5 Cir. 3/28/01), 783 So.2d 568, 581.

Defendant was convicted of aggravated battery, in violation of La. R.S. 14:34, and aggravated criminal damage to property, in violation of La. R.S. 14:55. At the time of the instant offenses in March of 2018, aggravated battery provided for a penalty of imprisonment with or without hard labor for not more than ten years, a fine of not more than five thousand dollars, or both. *See* La. R.S. 14:34(B). And the crime of aggravated criminal damage to property carried a penalty of imprisonment with or without hard labor for not less than one year nor more than fifteen years, a fine of not more than ten thousand dollars, or both. *See* La. R.S. 14:55(B). Defendant was sentenced to concurrent ten-year sentences at hard labor on each count and concurrent five thousand dollar fines on each count.[9]

Before sentencing defendant, the trial court stated that it had taken cognizance of La. C.Cr.P. art. 894.1 and its sentencing guidelines, finding there to be an undue risk that during a period of a suspended sentence or probation, defendant would commit another crime, that defendant was in need of correctional treatment, that a custodial environment was appropriate, and that a lesser sentence would deprecate the seriousness of the offenses. The trial court further acknowledged that defendant created a risk of death or great bodily harm to more

---

[9] It appears concurrent fines may be imposed. *See State v. Boyd*, 46,321 (La. App. 2 Cir. 9/21/11), 72 So.3d 952, where the Second Circuit held that the fines imposed by the trial court were not excessive, reasoning, among other considerations, that they were ordered to run concurrently.

than one person and that defendant used violence in the commission of the offenses.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Article I, § 20 of the Louisiana Constitution also prohibits cruel and unusual punishment, but further explicitly prohibits excessive punishment. A sentence is unconstitutionally excessive "if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." *State v. Davis*, 449 So.2d 452, 453 (La. 1984). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622.

A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. *State v. Dorsey*, 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. However, while a trial judge is given wide discretion in the imposition of sentences within statutory sentencing ranges, a sentencing judge does not possess unbridled discretion to impose a sentence within statutory limits. *State v. Sepulvado*, 367 So.2d 762, 769-70 (La. 1979). "In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the judge shall exercise his sentencing discretion to impose sentences gradated according to the individualized circumstances of the offense and the offender." *Id*. at 766. The "interactivity between the range of permissible statutory criminal sanctions and the individualized facts of each case creates a sliding, fact-variant spectrum for a trial judge's discretion under each criminal statute for each particular criminal defendant." *State v. Hamdalla*, 12-

1413 (La. App. 4 Cir. 10/2/13), 126 So.3d 619, 627, *writ denied*, 13-2587 (La. 4/25/14), 138 So.3d 642.

The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *Id.* Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. *State v. Badeaux*, 01-406 (La. App. 5 Cir. 9/25/01), 798 So.2d 234, 239, *writ denied*, 01-2965 (La. 10/14/02), 827 So.2d 414.

First, it is noted that defendant did not receive the maximum allowable sentence for the crime of aggravated criminal damage to property, having been sentenced to five years less than the maximum sentence that could have been imposed and five thousand dollars less than the maximum fine that could have been imposed.[10]

Also, when considering the first factor, the nature of the offenses, both aggravated battery and aggravated criminal damage to property are listed as crimes of violence under La. R.S. 14:2(B)(5) and La. R.S. 14:2(B)(19) respectively. *See also State v. Thomas*, 06-654 (La. App. 5 Cir. 1/16/07), 951 So.2d 372, 380. Moreover, as noted by the trial court, defendant created a risk of death or great bodily harm to more than one person, having retreated from a physical altercation with Harold George to retrieve a firearm and shoot at Harold's vehicle which was in the process of leaving the scene and contained three individuals. Ballistics

---

[10] *See State v. Stewart*, 15-721 (La. App. 5 Cir. 5/19/16), 193 So.3d 401, *writ denied*, 16-1166 (La. 5/12/17), 219 So.3d 1103 (citing *State v. Richardson*, 01-239 (La. App. 5 Cir. 6/27/01), 790 So.2d 717, 720) where this Court noted that the defendants were not sentenced to the maximum penalties under the statutes as the maximum permissible fine was not imposed.

evidence also established that twelve casings from a .40 caliber weapon were found at the scene and that several bullets struck Harold's vehicle, including the trunk, rear bumper, and rear passenger-side door. Moreover, one of the bullets entered the vehicle and wounded an innocent backseat passenger who was not involved in any part of the events that occurred that evening. The evidence at trial established that defendant shot a firearm multiple times in a residential neighborhood where other innocent bystanders could have been hit by a stray bullet. Therefore, the nature of the crime warranted a strong sentence.

Regarding the second factor, the nature and background of the offender, after defendant was convicted, his counsel requested that a post-conviction bond be set; however, the State strenuously objected, asserting that defendant was to be multiple billed for a prior felony conviction. No additional evidence is contained in the record regarding defendant's prior felony as no multiple bill was filed. Further, it appears that defendant was forty-four years old at the time of the commission of the offenses. Thus, it does not appear that this factor weighs in favor or against the sentences imposed.

Finally, the third factor, sentences imposed for similar crimes in this and other courts, the jurisprudence reveals that the imposition of a maximum ten-year sentence has been imposed for aggravated battery in similar situations. *See State v. Hawkins*, 95-0028 (La. App. 4 Cir. 3/29/95), 653 So.2d 715, where a ten-year maximum sentence for aggravated battery was found neither grossly out of proportion to the severity of the crime, nor a purposeless and needless imposition of pain and suffering such as to make it unconstitutionally excessive, given the defendant's complete lack of regard for the safety of the victim or others in vicinity of the crime scene in firing two clips of 9 mm bullets from an assault weapon at the victim and the victim's van after the defendant's van was damaged in a traffic accident; *State v. Stukes*, 08-1217 (La. App. 4 Cir. 9/9/09), 19 So.3d 1233, *writ*

*denied*, 09-2194 (La. 4/9/10), 31 So.3d 381, where concurrent ten-year sentences imposed upon the defendant convicted of two counts of aggravated battery were not unconstitutionally excessive. The trial court described the shootings as a "vicious, unprovoked attack" on the victims that seriously injured one and maimed the other for life; and *State v. Bacuzzi*, 97-573 (La. App. 5 Cir. 1/27/98), 708 So.2d 1065, where the defendant was convicted of aggravated battery and sentenced to ten years imprisonment. This Court affirmed the defendant's conviction and sentence on appeal, finding that the violent act committed by the defendant resulted in significant injury to the victim, and the defendant "used a dangerous weapon, to wit a firearm." *Bacuzzi*, 708 So.2d at 1069.

Additionally, the imposition of a ten-year sentence, or more, has been upheld for the crime of aggravated criminal damage to property in analogous situations. *See State v. Thomas*, 51,364 (La. App. 2 Cir. 5/17/17), 223 So.3d 125, *writ denied*, 17-1049 (La. 3/9/18), 238 So.3d 450, where a sentence of ten years following a guilty plea to aggravated criminal damage to property was not unconstitutionally excessive, where the sentence was within the statutory range and the plea-sentencing cap, and the charge arose out of the defendant's violent action of driving a car into a house where an individual was sitting; *State v. Bradstreet*, 16-80 (La. App. 5 Cir. 6/30/16), 196 So.3d 876, *writ denied*, 16-1567 (La. 6/5/17), 220 So.3d 752, where this Court found the trial judge did not abuse her discretion in sentencing the defendant to the fifteen-year maximum term of imprisonment for aggravated criminal damage to property where the trial judge did not impose the maximum permissible fine, and the vehicle at issue was parked in a driveway, abutting a residence in a residential neighborhood and sustained multiple bullet holes from the shootings of three separate weapons, discharging a total of twenty-nine bullets; and *State v. Carter*, 11-758 (La. App. 5 Cir. 5/31/12), 96 So.3d 1283, where the defendant was originally sentenced to ten years at hard labor for his

aggravated criminal damage to property conviction which was later vacated and a twenty-year enhanced sentence as a second-felony offender was imposed. This Court found that the defendant's enhanced sentence was not unconstitutionally excessive where the defendant struck a police vehicle with the vehicle he was driving as he attempted to escape from the officers who had blocked his vehicle in during an investigatory stop. This Court further found that the sentence was well within statutory limits, the defendant had an extensive criminal history, was on home incarceration at the time of the charged incident, and it was foreseeable that the defendant could have caused bodily harm to an officer.[11]

After consideration of the circumstances of this case and all other pertinent factors, we find that defendant's ten-year concurrent sentences and five thousand dollar concurrent fines are not unconstitutionally excessive as they are not disproportionate to the severity of his crimes. Thus, we find that the trial court did not abuse its discretion, and hold that defendant's lack of regard for the safety of the victim and others in the vehicle and in the vicinity of the crime scene support the sentences imposed in this case. This assignment of error is without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

The record fails to reflect that defendant was properly advised of the time period for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8. After imposition of defendant's sentences, the trial court informed defendant that he had "the right to file a petition for post-conviction relief […] you have a period

---

[11] *See also State v. Shea*, 436 So.2d 642 (La. App. 3rd Cir. 1983), *writ denied*, 440 So.2d 736 (La. 1983), where the defendant's nine-year sentence was upheld on appeal where the defendant armed himself and deliberately fired shotgun blasts into a truck occupied by four individuals, resulting in physical injury to one person. The Third Circuit noted that for purposes of evaluating alleged excessiveness, it found no merit to the defendant's argument that he did not contemplate that his criminal conduct would cause or threaten serious harm.

of two years, from the date the judgment of the Court becomes final, to file that petition for post-conviction relief." La. C.Cr.P. art. 930.8(A) provides that a defendant shall have two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922 to file for post-conviction relief, including applications which seek an out-of-time appeal.

If a trial court fails to advise, or provides incomplete advice, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *See State v. Perez*, 17-119 (La. App. 5 Cir. 8/30/17), 227 So.3d 864. Accordingly, by this opinion, we advise defendant that he shall have two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922 to file for post-conviction relief, including applications which seek an out-of-time appeal.

## CONCLUSION

For the foregoing reasons, defendant's convictions and sentences are affirmed. Further, defendant is advised that he shall have two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922 to file for post-conviction relief, including applications which seek an out-of-time appeal.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 26, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-KA-380

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
GWENDOLYN K. BROWN (APPELLANT)

HONORABLE BRIDGET A. DINVAUT
(APPELLEE)

BRIANA C. ROBERTSON (APPELLEE)

**MAILED**
HONORABLE EDWARD M. LEONARD, JR.
(DISTRICT JUDGE)
711 FIRST STREET
MORGAN CITY, LA 70380

ALLEN J. MYLES (APPELLANT)
ATTORNEY AT LAW
23445 RAILROAD AVENUE
PLAQUEMINE, LA 70764